**PROVIDENT AMERICAN INSURANCE COMPANY, Appellant,**

v.

**Denise CASTANEDA, Appellee.**

**No. 08–94–00340–CV.**

Court of Appeals of Texas, El Paso.

Jan. 18, 1996.

Rehearing Overruled Feb. 14, 1996.

Colbert N. Coldwell, Guevara, Rebe, Bauman, Coldwell & Garay, El Paso, Scott P. Stolley, Thompson & Knight, A Professional Corporation, Dallas, for appellant.

Ben H. Langford, El Paso, Timothy Patton, Pozza & Patton, San Antonio, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an insurer's appeal from a judgment awarding plaintiff damages under the Deceptive Trade Practices Act and Insurance Code, article 21.21 violations for unfair claims-handling practices. The plaintiff/appellee, Denise Castaneda, was an insured under her father's health insurance policy with defendant/appellant, Provident American Insurance Company. The jury found that Provident American violated various provisions of the DTPA and Insurance Code and awarded Ms. Castaneda $50,000 in actual

damages plus attorney's fees. Upon a jury finding that Provident American acted knowingly, plaintiff was awarded treble her actual damages. Provident American appeals the jury's findings in twelve points of error. We affirm in part and reverse and reform in part.

## FACTS

In May of 1991, Ms. Castaneda's brother, Guillermo, visited Dr. Edward Juarez because Guillermo felt lethargic and his skin was jaundiced. Dr. Juarez suspected hepatitis and anemia. Dr. Juarez ordered tests and prescribed bed rest and special attention to Guillermo's diet pending the test results. The Castaneda family applied for medical insurance with Provident American a few days after Guillermo's visit to Dr. Juarez; a family's policy was issued effective June 17, 1991.[1] Until that time, the family had no medical insurance coverage. The policy contained two limitations relevant to this lawsuit: first, it did not cover expenses resulting from sickness that first "manifests" within thirty days of the policy's effective date; second, the policy did not cover sickness or disorder involving certain internal organs, including the gallbladder, unless the loss occurs more than six months after the policy's effective date.

In early July, a family member told the Castanedas he had been diagnosed with Hemolytic Spherocytosis ("HS"). HS is an inherited disorder causing misshapen red blood cells. The affected cells are destroyed as they pass through the spleen causing anemia and jaundice. About 90 percent of persons suffering from HS develop gallstones. Doctors usually treat HS by removing the patient's spleen, which stops destruction of the red blood cells. If the HS patient is one of the 90 percent who develop gallstones, doctors usually remove the gallbladder. This relative's doctor recommended that the entire Castaneda family receive testing for HS, which is hereditary. On July 20, 1991, Mrs. Castaneda took Denise and Guillermo Castaneda to Dr. Roberto Canales, a hematolo-

---

1. Ms. Castaneda was an adult at the time of the surgery and she therefore filed suit on her own behalf. She was also a full-time student, and therefore eligible for coverage under her parents' policy.

gist. Dr. Canales determined that the Castaneda siblings had HS, and referred them to Dr. Jose Castillo for surgical treatment. In early August, Dr. Castillo operated on both Denise and Guillermo Castaneda removing their spleens and gallbladders.

The Castanedas submitted claims for their children's operations to Provident American. On October 30, 1991, Provident American denied both claims on the basis of the six-month policy exclusion period for sickness or disorder involving the gallbladder. Ms. Castaneda's father wrote to Provident American explaining that his children did not have conditions or diseases of the gallbladder, rather, the gallbladder removals were secondary to HS. Provident American re-opened the claims, and then again denied them on the ground that the HS disorder had "manifested" within thirty days of the policy's effective date. On December 12, 1991, Provident American sent a letter to the Castanedas stating that Provident American was willing to reconsider Ms. Castaneda's claim if the Castanedas provided further information including Dr. Canales' records and the names of other doctors who had treated Ms. Castaneda. It appears from the record that the Castanedas provided this information, but Provident American never reopened consideration. Provident American claimed that it believed there should have been records from Ms. Castaneda's earlier treatment for suspected hepatitis, and from Doctors Varela and Juarez, but Provident American did not receive those records. The evidence does not show whether the Castanedas were informed of Provident American's reason for not re-opening the claim, or if the Castanedas were asked specifically for these particular records. Although Mr. Castaneda and Ms. Castaneda's doctors attempted to correspond with Provident American after the December 12, 1991 letter, they received no further information on Ms. Castaneda's claim until Mr. Castaneda sent a letter complaining of Provident American's conduct to the Texas Department of Insurance. Provident American responded to the Department on April 15, 1992, pursuant to Department rules. There, Provident American indicated that Ms. Castaneda's medical history showed previous diagnosis of yellowish skin and hepatitis which indicated that symptoms of HS had manifested within and prior to the policy's thirty-day waiting period.

Ms. Castaneda claimed various violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code, article 21.21. She eventually sued the carrier under these theories and recovered judgment. As a covered beneficiary under the policy Ms. Castaneda's parents purchased, Ms. Castaneda is a consumer with respect to Provident American's policy pursuant to the Texas Deceptive Trade Practices Act and therefore has standing to sue under the Act. *See Aetna Cas. & Sur. Co. v. Marshall,* 724 S.W.2d 770, 772 (Tex.1987); *Birchfield v. Texarkana Mem. Hosp.,* 747 S.W.2d 361, 368 (Tex.1987) (infant was consumer of services because services were purchased for her and she "acquired" the services); TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). Provident American does not dispute Ms. Castaneda's standing under the DTPA or the Insurance Code.

### Charge Error

In Points of Error One, Two, Three, Five, Eight, and Nine, Provident American argues that the trial court committed reversible error in submitting the jury charge. The trial court made three liability inquiries: the first contained eleven alternative definitions of "deceptive act and practice" and inquired if Provident American had engaged in a deceptive act or practice that was a producing cause of damages to Ms. Castaneda; the second contained two definitions of "unconscionable conduct" and inquired if Provident American had engaged in such conduct that was a producing cause of damages to Ms. Castaneda; the final liability question in three sub-parts defined "false, misleading, or deceptive act and practice" and inquired if Provident American had engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages to Ms. Castaneda. The charge contained only one answer blank for each liability question. The jury answered "yes" to each of these questions, and further found that Provident American engaged in the conduct found in the first and third liability questions knowingly. Provident American asserts that some

sub-parts submitted in each liability question are not legally recognized causes of action, and some sub-parts are not supported by legally or factually sufficient evidence. It urges that the lack of separate answer blanks for each sub-part makes it impossible to determine whether the jury found liability on a legally recognized, factually supported theory. Similarly, it argues that the jury's award of actual and additional damages is unsupportable because it is impossible to determine if the damages are based on legally and factually supported liability findings.

### At Least One Sub-part Submitted in Error

■ We find that the trial court submitted certain sub-parts of the liability questions erroneously. For example, the first liability question contained a sub-part defining "unfair or deceptive act or practice" as:

Engaging in any false, misleading, or deceptive act or practices.

'False, misleading, or deceptive acts or practices' means an act or series of acts that have the tendency to deceive an average ordinary person, even though that person may have been ignorant, unthinking, or gullible....

This definition tracks § 17.46(a) of the DTPA. TEX.BUS. & COM.CODE ANN. § 17.46(a) (Vernon 1987). A consumer does not have a legally recognized cause of action for unfair insurance claims practices under § 17.46(a). *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145 (Tex.1994); *Hart v. Berko, Inc.,* 881 S.W.2d 502, 509 (Tex.App.—El Paso 1994, writ denied). Under § 16 of article 21.21 of the Insurance Code, a plaintiff may recover treble damages for violations of those "practices defined" by § 17.46 of the DTPA, which means only those practices expressly made actionable in § 17.46(b) and not any unlisted practice determined to be false, misleading, or deceptive pursuant to § 17.46(a). TEX. BUS. & COM.CODE ANN. § 17.46 (Vernon 1987 and Supp.1996). *Vail v. Texas Farm Bureau*

*Mut. Ins. Co.,* 754 S.W.2d 129, 135 (Tex. 1988). Thus, at least that part of the question allowing the jury to find liability based on a theory that § 17.46(a) is not a legally recognized cause of action in an unfair claim case. The trial court erred in submitting it.

### Error is Not Harmful

■ In order to determine whether an error in the jury charge is harmful, however, an appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Development Corporation v. Republic of Texas Savings Association,* 710 S.W.2d 551, 555 (Tex.1986); *Hart,* 881 S.W.2d at 511. Error is reversible only when, viewed in the totality of the circumstances, it amounted to such a denial of the rights of the complaining party that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Hart,* 881 S.W.2d at 511; TEX. R.APP.P. 81(b)(1). Under Rule 81(b)(1), Provident American must persuasively demonstrate to this Court that it has suffered harm from submission of the defective portion of the liability question. *Id.* Provident American has not met that burden.

Whether the jury may have relied upon a legal theory submitted in error is not dispositive of the harm issue because it does not affirmatively demonstrate that the error probably caused rendition of an improper judgment. While it is possible that the jury made an affirmative finding based upon an improperly submitted theory of liability, possibility is not a sufficient showing under Rule 81(b)(1). *Hart,* 881 S.W.2d at 511. In *Hart,* another unfair claims case, the trial court improperly submitted a liability issue tracking § 17.46(a). As in this case, other liability theories were submitted in broad form with one answer blank for the group of theories. This Court found that because at least one of the other liability theories supported the verdict, error was harmless. *Id.* at 510–12.[2] In order to conclude that the error complained

---

2. There are several cases that hold to the contrary, but in doing so, fail to conduct a harmless error analysis: *Lucas v. Nesbitt,* 653 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Johnson v. Willis,* 596 S.W.2d 256, 262

(Tex.Civ.App.—Waco 1980), *writ ref'd n.r.e.,* 603 S.W.2d 828 (Tex.1980); *Parker v. Keyser,* 540 S.W.2d 827, 830–31 (Tex.Civ.App.—Corpus Christi 1976, no writ).

of resulted in harm requiring reversal, we must next determine whether or not there is evidence supporting an affirmative answer to any of the other legal theories propounded to the jury. *Id.* at 510–12; *see also Ford Motor Company v. Pool,* 688 S.W.2d 879, 882 (Tex. App.—Texarkana 1985), *aff'd in part, rev'd in part,* 715 S.W.2d 629 (Tex.1986) (error in special issue as to one theory of liability harmless where there was evidence to support other properly submitted legal theory set forth in same question); *Bernstein v. Portland Savings and Loan Association,* 850 S.W.2d 694, 702 (Tex.App.—Corpus Christi 1993, writ denied) (jury instructed on three different fraudulent acts, but instruction as to one type of fraud was erroneous; because jury found fraud on broad-form jury question, court could not determine which of three acts of fraud was found by jury; to determine if error harmful, court examined whether jury's finding of fraud was supported under other two types of fraud). If the evidence supports the jury's finding on any legally recognized theory submitted in the charge, then Provident American has failed to demonstrate that it is more likely than not that an improper judgment resulted from the error. *Bernstein,* 850 S.W.2d at 702.

Thus, if any one of the theories submitted under a broad-form liability submission is a legally recognized cause of action and is factually supported by the evidence, the judgment must be upheld regardless of whether other submitted theories are legally and factually supported. In this case, we find at least two of the sub-parts submitted under the first liability question are legally recognized causes of action sufficiently factually supported to uphold the jury's liability finding and award of actual and additional damages, and therefore the error in submitting one erroneous legal theory is harmless.

### Sub-part J and H are Legally Recognized Causes of Action

■■■ Sub-part J of the first liability question defined an unfair act or practice as follows:

J. Not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim when liability has become reasonably clear....

The Texas Supreme Court has specifically recognized that this definition is a legally recognized cause of action under both § 17.50(a)(4) and article 21.21, § 16. In *Vail,* the Supreme Court stated

The Vails pleaded that Texas Farm had not attempted in good faith to effectuate settlement of their claims after its liability became reasonably clear, a practice defined in article 21.21–2 and prohibited by Board Order 18663. By incorporating Board Order 18663 and the definition contained in article 21.21–2, Sec. 2(d), the Vails stated a cause of action pursuant to section 17.50(a)(4) of the DTPA and article 21.21, Sec. 16. *Vail* 754 S.W.2d at 134.[3]

Sub-part H of the first liability question defined an unfair act or practice as follows:

H. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies....

Although the cause of action stated in sub-part H is not specifically mentioned in *Vail,* it is also a practice defined in article 21.21–2 and prohibited by a regulation issued by the State Board of Insurance. *See* Tex.Admin.Code § 21.203(2), for which a consumer possesses a private cause of action. Tex.Bus. & Com.Code Ann. § 17.50(a)(4) (Vernon Supp. 1996). Thus, we find this definition is also a legally recognized cause of action.

Although Provident American argues that *Watson* succeeds *Vail* and further limits causes of action available to insureds, *Watson* was a third-party case. In *Watson,* the Supreme Court specifically recognized that *Vail* is still the law applicable to insurer-insured cases. *Watson,* 876 S.W.2d at 149. We conclude that at least sub-parts J and H of the first liability question are legally recognized

---

3. Board Order 18663 is now found at 28 Tex.Admin.Code § 21.203. Article 21.21–2, § 2(d) is now renumbered as article 21.21–2, § 2(b)(4).

causes of action in the first-party lawsuit here.[4]

### Sufficiency of the Evidence to Support Jury Findings

■ Having concluded that supportable theories of liability were submitted to the jury, we next turn to Provident American's challenge to the legal and factual sufficiency of the evidence to support liability based on those theories, and the findings Provident American acted knowingly. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron*, 724 S.W.2d 908 (Tex.App.—Fort Worth 1987, no writ); *see generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515 (1991).

■ A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at 660; *Worsham Steel Co.*, 831 S.W.2d at 81. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained.

*Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex. App.—El Paso 1981, no writ). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 821 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

■ Here, Provident American first denied Ms. Castaneda's claim on the basis of the six-month exclusion for diseases of certain organs, including the gallbladder. The evidence showed, however, that HS is not a disease of the gallbladder, rather, removal of the gallbladder is secondary to HS. After Mr. Castaneda informed Provident American that HS is not a disease of the gallbladder, Provident American denied Ms. Castaneda's claim on the basis that Ms. Castaneda's HS had manifested within the thirty-day exclusion period. Provident American's letter stated that Dr. Canales' records indicated a history of jaundice and hepatitis, and that Provident American would therefore need additional records to determine the date of onset of Ms. Castaneda's HS. There is some evidence in the record that Ms. Castaneda was jaundiced and felt occasional abdominal pain before and within the thirty-day exclusion period. Jaundice and abdominal pain are symptoms of HS and its secondary gallstone problem. As Provident American's

---

4. In its response brief and at oral argument, Provident American urged an alternative theory: that Ms. Castaneda may only prevail if she proved breach of the common law duty of good faith and fair dealing. In support of this argument, the carrier cites *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 339 (Tex.1995) and this Court's opinion in *Stewart Title Guaranty Co. v. Aiello*, 911 S.W.2d 463 (Tex.App.—El Paso 1995, no writ h.). We do not believe these cases stand for the proposition urged. Rather, *Stoker* simply recognized that plaintiffs had alleged parallel causes of action under common law and the insurance code ("[t]he statutory violations were premised solely on the Stokers' bad faith claim").

*Aiello*, in concluding that the holding of *Aetna Casualty and Surety Co. v. Marshall*, 724 S.W.2d 770, 771 (Tex.1987), a 21.21 case, applied in a common law bad faith situation as well, stated "[i]n *Marshall*, although the Supreme Court did not reach the issue of whether the duty of good faith and fair dealing continued after entry of the agreed judgment, we see no real distinction between the continuing nature of that duty and those imposed by Article 21.21."

We do not see that this language in any way restricts claimants from relying on other prohibited conduct to prove a violation of the DTPA laundry list or article 21.21, § 4, and other prohibited conduct supports the verdict here.

own letter acknowledges, however, the jaundice was associated with a prior bout with hepatitis. Further, the Castaneda family maintained that Ms. Castaneda had always had a yellowish cast to her skin and that her color had not changed significantly prior to diagnosis. Mr. Castaneda made Provident American aware of this in his letter of January 23, 1992. Ms. Castaneda's medical records, which were provided to Provident American, indicate that Ms. Castaneda thought her abdominal pain was indigestion. The record reflects that the first information Provident American received from Dr. Castillo indicated that Ms. Castaneda had been diagnosed with HS within the thirty-day exclusion period. Even prior to Provident American's December 12 letter, however, Dr. Canales corrected the mistake in an October 28, 1991 letter to Provident American stating that Ms. Castaneda had never been diagnosed until after July 20, 1991. Provident American's expert admitted that HS is difficult to diagnose, a patient may have symptomless HS throughout life, and HS is not apparent to someone without special training.

Further, the record shows a significant period of delay between Provident American's December 12, 1991 letter requesting additional information until April of 1992, after Mr. Castaneda complained to the Insurance Board. During this time, Provident American claims that it did not have all of the information it required to re-examine the claim, but the record reflects no request from Provident American for more information, despite numerous inquiries from the Castanedas and their doctors. This evidence is legally and factually sufficient to support a conclusion that it was reasonably clear to Provident American that Ms. Castaneda's HS had not manifested within the thirty-day waiting period. Provident American's failure to act for over eight months from the date of surgery further supports a finding that Provident American failed to attempt in good faith to effect a prompt, fair, and equitable settlement of Ms. Castaneda's claim after liability became reasonably clear. This evidence is also sufficient to support a finding that Provident American failed to promptly acknowledge various inquiries by both the

Castaneda family and Ms. Castaneda's doctors.

The evidence also supports the jury's finding that Provident American engaged in this conduct knowingly. "Knowingly" means actual awareness ... of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Tex.Bus. & Com. Code Ann. § 17.45(9) (Vernon Supp.1996). A Provident American claims manager here testified that once the insurer requested the additional records from Mr. Castaneda, the insurer had the responsibility to follow up on that request. Contrary to this standard, there is no evidence that Provident American ever informed the Castanedas it had not received all the information it needed. An internal Provident American document dated February 19, 1992 indicated that Provident American informed the Castanedas that they would hear more on Ms. Castaneda's claim within two weeks, but Provident American never again communicated with the Castanedas until a letter was sent to the Department of Insurance. Provident American's director of operations and claims manager admitted that Provident American's failure to respond to and follow up on Ms. Castaneda's claim was unusual and improper. We find this evidence sufficient to support the jury's findings that Provident American knowingly failed to promptly effectuate a settlement once liability became reasonably clear, and knowingly failed to acknowledge the Castanedas' inquiries promptly.

We conclude that sub-parts J and H of jury question one are legally recognized causes of action that are supported by legally and factually sufficient evidence to affirm the jury's verdict. We further conclude that the evidence supports a finding that the prohibited conduct was a knowing violation. Accordingly, we overrule Provident American's Points of Error One, Two, Three, Five, Eight, and Nine.

### Sufficiency of the Evidence to Support Damages

In Points of Error Four and Six, Provident American alleges that the evidence is factual-

ly and legally insufficient to support each of the two elements of damages submitted, and that the lack of separate answer blanks for different elements of damage makes it impossible to determine whether the total damage award is sufficiently supported by the evidence. The trial court submitted the damage question as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate DENISE CASTANEDA for the damages, if any, that you have found or [sic] caused by PROVIDENT AMERICAN INSURANCE COMPANY in your answers to Questions 1, 3, or 4?
>
> > Consider the elements of damage listed below and none other. Consider each element separately. Do not include damages for one element in any other element.
> >
> > > a. Loss of credit reputation. 'Credit' means the ability of an individual to borrow on the opinion conceived by the lender that he will be repaid.
> > >
> > > b. Loss of benefits. 'Loss of benefits' means the amount of benefits due under the policy.
> >
> > Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that—
>
> were sustained in the past; Answer: $50,000.00
>
> in reasonable probability
> will be sustained in the future. Answer: 0

Thus, the jury's $50,000 total verdict is made up of some unknown combination of past loss of credit reputation and policy benefits.

Provident American argues that Ms. Castaneda failed to present evidence of her lost benefits comporting with a contractual measure of damage. The insurance policy provided only for payment of fees not in excess of reasonable, usual, and customary charges. Provident American asserts that because Ms. Castaneda failed to introduce evidence that the charges for her medical expenses were within the confines of reasonable, usual and customary charges, she cannot recover for any loss of benefit damages. Provident American relies upon *National Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 510 (Tex.App.—Corpus Christi 1989, writ denied), which is not a DTPA case. In contrast, *Vail*, an Insurance Code/DTPA case, holds that an insurer's unfair refusal to pay the insured's claim causes damage "as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Vail*, 754 S.W.2d at 136. Because of the DTPA's liberal approach to compensatory damages, the injured party is not restricted to a contractual measure of damages. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992). The evidence showed that Ms. Castaneda's medical expenses totaled $14,348.90. The record shows no dispute that Ms. Castaneda submitted claims in that amount and received no payment.

Ms. Castaneda's medical expenses alone, clearly, are not sufficient to support the jury's total verdict of $50,000. Thus, Ms. Castaneda's loss of credit reputation must account for at least part of the damage award. Loss of credit is recoverable as an element of actual damage in a suit where the damage to credit was the necessary and usual result of the defendant's actions. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 688 (Tex.1981). Provident American asserts that the evidence is legally and factually insufficient to support any damages for Ms. Castaneda's loss of credit reputation. Applying the legal and factual sufficiency tests stated earlier in this opinion, we find that there is evidence sufficient to support the jury's finding of at least some damage to Ms. Castaneda's credit reputation. Ms. Castaneda testified that her credit is ruined. She conceded that since her operation and up to the time of trial, she was still a student, earning only $400 per month. She has not been able to pay her medical bills, and those are the only delinquencies on her credit report. Since her surgery, Ms. Castaneda has applied for several credit cards but has been rejected for delinquencies on her credit report. A reasonable jury could therefore conclude her credit reputation was damaged by Provident American's failure to pay her claim.

Provident American nevertheless argues that the evidence is insufficient to show loss of credit damages in an amount of

at least $36,000, which the evidence must support to sustain the $50,000 award for past damages. Ms. Castaneda testified only that she had been turned down for several credit cards in the past. The total damages awarded by the jury may seem large for the loss of a few credit cards. Damages for loss of credit reputation, however, are not capable of definite ascertainment. *See Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 146 (Tex.App.—Dallas 1992), *judgment set aside by agr.,* 843 S.W.2d 486 (Tex.1993). The amount of damage must only be established with the degree of certainty to which it is susceptible. *Southwestern Bell Tel. Co. v. Sims,* 615 S.W.2d 858, 864 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). When the amount of damages is not capable of definite ascertainment, determination of the amount is necessarily lodged in the discretion of the jury. *Bradbury v. Scott,* 788 S.W.2d 31, 39 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). We therefore find that the evidence is sufficient to support the jury's award of damages to Ms. Castaneda for loss of credit reputation.

With respect to the entire $50,000 jury award, so long as the aggregate evidence for all elements of damage supports the entire award, we must uphold the jury's verdict. *See Haryanto v. Saeed,* 860 S.W.2d 913, 922 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Here, the evidence is sufficient to show that Ms. Castaneda suffered between $11,834.90 and $14,348.90 in loss of benefits. Further, the evidence is sufficient to support a jury award for the remaining amount, or for the entire verdict, Ms. Castaneda's loss of

credit reputation. Accordingly, we overrule Points of Error Four and Six.

### *Remittitur*

In its seventh point of error, Provident American argues that the trial court erred in failing to order a remittitur to reduce the actual and additional damage. For the reasons stated in our discussion of Points of Error Four and Six, we do not find that the total damage award was so grossly excessive as to warrant a remittitur. Accordingly, we overrule Point of Error Seven.

### *Penalty Pursuant to Article 3.62*

After the jury verdict, the trial court added a 12 percent penalty to the judgment pursuant to TEX.INS.CODE ANN. art. 3.62 (Vernon 1981).[5] Provident American asserts that it was error for the trial court to add the penalty because the single answer blank for damages precludes a calculation of the penalty. Article 3.62 provided, in pertinent part:

> In all cases where a loss occurs and the … health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss…. TEX.INS.CODE ANN. art. 3.62.

Here, we find that the lack of a separate answer blank for loss of benefits, and the lack of any jury finding on the amount of Ms. Castaneda's loss pursuant to the policy, precludes recovery under article 3.62. Although the lack of separate answer blanks does not constitute harmful error with regard to the actual damages because a combination of the two elements or loss of credit alone is sufficient to support the jury's actual damages award, the same is not true with respect to the 12 percent penalty under article 3.62. The statute specifically limits the penalty to the amount of the loss covered by the policy. TEX.INS.CODE ANN. art. 3.62. Ms. Castaneda failed to obtain any finding that would allow the trial court to determine the amount of loss under the policy in order to apply the

---

5. Now repealed.

penalty correctly. This Court is prevented from determining whether the statutory penalty was correctly applied. *See e.g. Wingate v. Hajdik*, 795 S.W.2d 717, 719–20 (Tex.1990) (individual plaintiff submitted both corporate and individual causes of action with unsegregated damages finding; appellate court could not determine what amount of damages properly awarded to individual plaintiff because corporate and individual damages not segregated); *Lovelace v. Sabine Consolidated, Inc.*, 733 S.W.2d 648, 654 (Tex.App.—Houston [14th Dist.] 1987, writ denied) (plaintiff submitted breach of contract and fraud causes of action with unsegregated damage finding; Court could not determine if punitive damage award was permissibly based fraud liability finding, or impermissibly based on contract finding).

Ms. Castaneda argues that Provident American stipulated to the amount of unpaid benefits—$13,801.90—in its objection to form of judgment. We have examined that pleading, and cannot conclude that anything contained there rises to the level of a stipulation. Rather, the statement upon which plaintiff relies merely says: "the only evidence of a sum certain of damages relates to $13,801.90 of benefits...." This is insufficient to sustain the 12 percent penalty, particularly in light of Provident American's objections to judgment containing the penalty. Accordingly, we sustain Point of Error Ten.

### Attorney's Fees

 In its eleventh point of error, Provident American asserts that the trial court committed reversible error in submitting the attorney's fees question. The trial court submitted the question as follows:

> What is a reasonable fee for the necessary services of DENISE CASTANEDA'S attorney in this case, stated as a percentage of DENISE CASTANEDA'S recovery? Answer by stating a percentage.

The jury answered 33 percent. Provident American alleges that the word "recovery" interjects speculation into the verdict, because the jury cannot know what Ms. Castaneda's "recovery" is. The DTPA mandates recovery of reasonable and necessary attorney's fees. Numerous authorities hold that submission of attorney's fees as a percentage of recovery is not error. *See Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377 (Tex.App.—San Antonio 1990, writ denied); *March v. Thiery*, 729 S.W.2d 889 (Tex.App.—Corpus Christi 1987, no writ); *City of Dallas v. Arnett*, 762 S.W.2d 942 (Tex.App.—Dallas 1988, writ denied). Provident American asserts no specific harm resulting from the trial court's submission. We overrule Point of Error Eleven.

### Insurance Code Article 21.21, § 23

 In its final point of error, Provident American alleges that the trial court erred in failing to state in the judgment that the amounts awarded to Ms. Castaneda may be paid only from Provident American's capital or surplus. TEX.INS.CODE ANN. art. 21.21, § 23 states, in pertinent part:

> [J]udgments ... which are assessed or awarded as provided in this Article shall be paid only from the capital or surplus funds of the offending insurance company.... TEX.INS.CODE ANN. art. 21.21, § 23 (Vernon Supp.1996).

Provident American relies upon public policy in urging that we apply this restriction to judgments under the DTPA. Ms. Castaneda argues that Provident American waived any error in failing to restrict her recovery by failing to object to the charge, or to obtain a ruling in various post-trial motions. First, the restriction is not a matter for determination by the jury, therefore Provident American had no duty to object to the charge or to submit the issue. The record reflects that Provident American filed a written objection to Ms. Castaneda's proposed judgment. The objection specifically stated that the judgment should restrict Ms. Castaneda's recovery to capital or surplus funds. The first judgment signed by the trial court did not contain Provident American's requested restrictive language. Provident American timely filed a motion to modify the judgment, again requesting the restrictive language found in article 21.21, § 23. The trial court did not modify the judgment to include the language in a subsequently signed judgment. Although Provident American never obtained a specific ruling on its objection or on its

motion to modify, it is apparent from the record that Provident American made the trial court aware of the specific nature of its complaint, and that the trial court did not act to include Provident American's requested language in the judgment. A motion to modify may be overruled by operation of law. *See* TEX.R.CIV.P. 329b(c). We therefore find that Provident American sufficiently preserved error for our review.

Ms. Castaneda asserts that Provident American is not entitled to the restriction because the DTPA does not incorporate all of article 21.21. Because § 23 is not specifically incorporated, and because the DTPA does not include a similar limitation on recovery, Ms. Castaneda argues that limitation of her recovery to Provident American's capital and surplus is inapplicable. Neither party cites any helpful authority, and our review of Texas case law reveals none. Under these circumstances, we believe that because Ms. Castaneda's recovery was under the DTPA, rather than directly under the insurance code, the trial court properly refused to limit the sources from which she can satisfy her

judgment.[6] We overrule Point of Error Twelve.

### CONCLUSION

The trial court's judgment awarded Ms. Castaneda $50,000 in actual damages, $100,000 in additional damages based on the $50,000 actual damage award, $1,656.22 as a 12 percent penalty on $13,801.90 in lost benefits under the policy pursuant to TEX.INS.CODE ANN. art. 3.62, prejudgment interest in the amount of $13,733.50 and attorney's fees in the amount of $55,129.90. We reverse only that portion of the trial court's judgment awarding Ms. Castaneda a 12 percent penalty on her loss under the policy and remand the cause to the trial court to compute prejudgment interest and attorney's fees on the reformed amount. In all other matters, the trial court's judgment is affirmed.

---

**6.** In any event, it appears a supersedeas bond has been filed and that a surety will be liable for the judgment amount. Any error, therefore, is harmless.