TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00125-CV






Connell Chevrolet Co., Inc., Appellant




v.




George R. Leak, Sr., Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY


NO. 36,557, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING







 This deceptive trade practices case involves representations made during the sale of a truck
from appellant Connell Chevrolet Company ("the dealership") to appellee George R. Leak, Sr. Based on
jury findings that the dealership had violated the Texas Deceptive Trade Practices Act ("DTPA"), Tex.
Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1998), the trial court rendered judgment that
Leak recover economic damages, additional damages, mental anguish damages, attorney's fees, and
prejudgment interest. The dealership does not challenge the jury's finding that it violated the DTPA. By
eight points of error, however, the dealership contends that (1) the evidence was legally and factually
insufficient to support certain other jury findings, (2) the trial court erred by refusing to submit the
dealership's jury question regarding revocation, and (3) the assessment of post-judgment sanctions was
improper. We will reverse and render in part and affirm in part the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 In December 1994, Leak went to the dealership and told a salesman he wanted to trade
his standard transmission, six-cylinder pickup truck for a truck with an eight-cylinder engine. The salesman
indicated a particular truck on the lot as having an eight-cylinder engine. Without the salesman
accompanying him, Leak went out on the lot and looked at the truck. Relying on the salesman's
representation that the truck had an eight-cylinder engine, Leak bought the truck. An assistant manager
completed the loan paperwork that indicated Leak bought a truck with an eight-cylinder engine. In fact,
all of the paperwork Leak received the day of the sale indicated that the truck had an eight-cylinder engine. 
Six months later, Leak discovered that the truck actually had a six-cylinder engine. Leak spoke with Mitch
Connell, the president of the dealership, and complained about the misrepresentation. Connell attempted,
without success, to find the same type of truck with an eight-cylinder engine at another dealership. Leak
tried five or six times to get the dealership to replace the truck but was unsuccessful. After six weeks, the
dealership told Leak that it would not deal with him further and that he should get a lawyer. Leak notified
NationsBank, the lender, that he was stopping payments on his truck note because of the dealership's
misrepresentations; he then commenced this DTPA lawsuit.

 The jury found that the dealership had knowingly engaged in a false, misleading, or
deceptive act or practice that was a producing cause of damages to Leak, found economic damages of
$10,000 and mental anguish damages of $11,000, and assessed $30,000 additional damages. The trial
court rendered judgment in accordance with the verdict, adding awards of prejudgment interest and
attorney's fees. The dealership perfected this appeal.


DISCUSSION


Damages

Economic Damages

 By points of error six and seven, the dealership contends the evidence was legally and
factually insufficient to support the jury's award of $10,000 as economic damages. The dealership
concedes that Leak presented sufficient evidence of $7,895.57 in out-of-pocket damages, but contends
that insufficient evidence supports any sum over that amount.

 In assessing the legal sufficiency of the evidence, we consider only the evidence and
inferences tending to support a finding and disregard all evidence and inferences to the contrary. King v.
Bauer, 688 S.W.2d 845, 846 (Tex. 1985); e.g., Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 111 S. Ct. 135 (1990). In determining the factual sufficiency of the evidence,
we consider and weigh all of the evidence and set aside the judgment only if the evidence is so weak that
the verdict is clearly wrong and unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986);
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Regarding damages, a reviewing court cannot substitute
its conclusions for those of the jury so long as the aggregate evidence for all of the damage elements
supports the entire award. Haryanto v. Saeed, 860 S.W.2d 913, 922 (Tex. App.--Houston [14th Dist.]
1993, writ denied).

 The trial court defined economic damages as "compensatory damages for pecuniary loss
including loss of bargained for value, consideration paid, out of pocket expenses and damage to one's
credit. The term does not include additional damages or damages for mental anguish." The dealership first
asserts that Leak cannot recover both benefit-of-the-bargain damages and out-of-pocket damages. We
agree. We disagree, however, with the dealership's second contention: that no evidence or factually
insufficient evidence exists to support Leak's recovery of damage to his credit.

 Leak claimed that the dealership's misrepresentations directly caused his credit to be
damaged. Once Leak learned that the truck he bought was a six-cylinder, he told NationsBank that he
would no longer make payments on the truck because of the dealership's misrepresentations. After telling
the dealership about the truck and getting no relief, Leak went to another dealership and attempted to buy
a truck. There, he was denied a loan to purchase a truck due to his bad credit report from the dealership.

 Loss-of-credit damages are recoverable when damage to credit is the usual or probable
result of the defendant's conduct. Mead v. Johnson Group, Inc., 615 S.W.2d 685 (Tex. 1991). To
prove that credit is harmed is to prove only nominal damages; not until a loan is actually denied or a higher
interest rate charged is there proof of actual damages that may be compensated. St. Paul Surplus Lines
Ins. Co. v. Dal-Worth Tank Co., 41 Tex. Sup. Ct. J. 380, 381 (February 13, 1998). Moreover, the
amount of loss suffered when one's credit is injured is not always capable of exact ascertainment. See
Provident Am. Ins. Co. v. Castaneda, 914 S.W.2d 273, 282 (Tex. App.--El Paso 1996, no writ) (citing
Commonwealth Lloyd's Ins. Co. v. Thomas, 825 S.W.2d 135, 146 (Tex. App.--Dallas 1992), writ
granted w.r.m., 843 S.W.2d 486 (Tex. 1993)). When the amount of damages is not capable of definite
ascertainment, determination of the amount is necessarily lodged in the discretion of the jury. See
Castaneda, 914 S.W.2d at 282 (citing Bradbury v. Scott, 788 S.W.2d 31, 39 (Tex. App.--Houston
[1st Dist.] 1989, writ denied)).

 We conclude that the evidence was sufficient for the jury to assess $2,104.43 as damages
to credit, i.e., to assess a combined total of $10,000 in economic damages. The jury could have
determined that the damage to Leak's credit was the usual or probable result of the dealership's conduct. 
The jury could also have concluded that, but for the dealership's misrepresentation, Leak would not have
been seeking to buy another truck. In short, the jury could have determined that because Leak was denied
a loan to purchase another truck, his credit suffered in the amount of $2,104.43. We overrule points of
error six and seven.


Additional Damages

 By point of error four, the dealership contends the evidence was legally and factually
insufficient to support the jury's finding that the dealership knowingly engaged in a false, misleading, or
deceptive practice when representing the truck as having an eight-cylinder rather than a six-cylinder engine.

 Only upon a finding that the conduct of the defendant was committed "knowingly" may the
trier of fact award additional damages of up to three times the amount of actual damages in excess of
$1,000. Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1440, 1491 (DTPA
§ 17.50(b)(1), since amended). (1) To act knowingly means to act with "actual awareness of the falsity,
deception, or unfairness of the act or practice giving rise to the consumer's claim." Act of May 16, 1979,
66th Leg., R.S., ch. 603, § 2, 1979 Tex. Gen. Laws 1327 (DTPA § 17.45(9), since amended). The
Texas Supreme Court recently clarified the standard for finding actual awareness:


"Actual awareness" does not mean merely that a person knows what he is doing; rather,
it means that a person knows that what he is doing is false, deceptive, or unfair. In other
words, a person must think to himself at some point, "Yes, I know this is false, deceptive,
or unfair to him, but I'm going to do it anyway."



St. Paul Surplus Lines, 41 Tex. Sup. Ct. J. at 382. Actual awareness is more than conscious indifference
to another's rights or welfare. Id. Nonetheless, actual awareness may be inferred where objective
manifestations indicate that the person acted with actual awareness. Id. at 381.

 The only witnesses to testify about relevant events were Leak and Connell. Leak testified
that the salesman told him that the truck he purchased had an eight-cylinder engine. The dealership's
assistant manager prepared the loan paperwork and an application for an extended warranty. All of the
paperwork and the application for the warranty indicated that the truck had an eight-cylinder engine. Only
when the extended warranty was returned from the underwriter did it show that the truck had a six-cylinder
engine. Leak argues that, because the dealership provided the information to the underwriter for the
extended warranty, someone at the dealership must have known the truck had a six-cylinder rather than
an eight-cylinder engine. The dealership responds that it simply made a mistake by representing to Leak
the truck had an eight-cylinder engine.

 We agree that the evidence supports the proposition that the dealership must have had
information from which it could have determined that the truck had a six-cylinder engine. There is no
evidence, however, that those making the representations at the dealership--the salesman and the assistant
manager--were consciously aware that they were acting falsely, deceptively, or unfairly in representing the
engine size to Leak. Neither the assistant manager nor the salesman testified. While the dealership may
have had the means to determine that the truck had a six-cylinder engine, that is not enough. The test
enunciated in St. Paul Surplus Lines dictates that at least someone at the dealership must have had a
subjective awareness of the falsity, deception, or unfairness before the dealership can be held to have acted
knowingly. Here, there is no evidence, circumstantial or otherwise, that the salesman or the assistant
manager knew the truck had a six-cylinder engine and, nevertheless, falsely represented it had an eight-cylinder engine. Nor is there evidence that someone else at the dealership knew the true facts but
knowingly let them be misrepresented by the salesman and assistant manager. Nor is there evidence that
anyone at the dealership consciously avoided learning the true facts. In sum, there is no evidence in this
record to support the finding that the dealership acted knowingly. We sustain point of error four.


Mental Anguish Damages

 By points of error two and three, the dealership contends the evidence was legally and
factually insufficient to support the jury's award of $11,000 for mental anguish damages. In a DTPA case,
mental anguish damages are recoverable only when false, misleading, or deceptive acts are committed
knowingly. Luna v. North Star Dodge Sales, Inc., 667 S.W.2d 115, 117-18 (Tex. 1984). Since we
hold there was no evidence of a knowing misrepresentation, we sustain points of error two and three.


Jury Charge Error


 By point of error five, the dealership contends the trial court erred by failing to submit its
properly tendered question to the jury about Leak's revocation of his acceptance of the truck.

 When Leak stopped paying his truck note, the dealership bought the note from
NationsBank pursuant to an agreement between the dealership and the bank. The dealership
counterclaimed against Leak, seeking to recover on the note. In defense of the dealership's counterclaim,
Leak contended he properly "revoked acceptance" of the truck.

 Revocation of acceptance must occur within a reasonable time after the buyer discovers
or should have discovered the basis for it and before any substantial change in condition of the goods which
is not caused by their own defects. Tex. Bus. & Com. Code Ann. § 2.608(b) (West 1994). It is not
effective until the buyer notifies the seller. Id.

 By question six, the jury was asked, "Did George R. Leak, Sr. revoke his acceptance of
the truck within a reasonable time?" Accompanying the question, the court provided the jury with the
following instruction:


Revocation of acceptance must occur within a reasonable time after the buyer discovers
or should have discovered the grounds for revocation and before any substantial change
in condition of the goods which is not caused by their own defects. Revocation is not
effective until the buyer notifies the seller of it.



The dealership argues that despite the instruction given referring to substantial change, the question was
not proper because it failed to tell the jury it must find that revocation occurred both within a reasonable
time and before any substantial change. The dealership contends it submitted a written question that
included the necessary element of substantial change which the court refused.

 We review the court's jury charge using an abuse of discretion standard of review: did the
trial court act without reference to guiding principles? Texas Dep't of Human Servs. v. E.B., 802 S.W.2d
647, 649 (Tex. 1990). If the charge resolves the controlling issues raised by the pleadings and any
evidence in a feasible manner that does not confuse the jury, no error occurs. Furthermore, error in the
jury charge is reversible only if it probably caused the rendition of an improper verdict. Tex. R. App. P.
44.1(a). (2)

 We hold the trial court did not abuse its discretion in charging the jury about revocation. 
The question and definition together included all the elements of revocation.


Newly Discovered Evidence


 The dealership also contends, by point of error five, that the trial court erred by failing to
grant its motion for new trial based upon newly discovered evidence. The dealership argues that four days
before trial it discovered that the truck had been "totaled," i.e., damaged to the extent that repairing it
would have cost more than its pre-accident value. The dealership argues it should receive a new trial, not
because the truck was totaled, but because Leak claimed ownership of the truck when signing it over to
the salvage yard, thereby showing that he had never revoked his acceptance. The dealership argues that
Leak's continued custody and control over the truck almost a year after he allegedly revoked his
acceptance should have been presented to the jury. The dealership contends that the judgment should be
reversed and a new trial ordered on the dealership's counterclaim on the note.

 Whether a motion for new trial will be granted or denied is within the trial court's discretion. 
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). A party moving for a new trial based upon
the existence of newly discovered evidence has the burden of showing: (1) admissible, competent evidence
showing the existence of the newly discovered evidence; (2) the evidence has come to the party's attention
since trial and the party had no notice of its existence before trial; (3) the party used due diligence to
procure the evidence before trial; (4) the evidence is not merely cumulative of that already presented and
does not tend only to impeach the testimony of the adversary; and (5) the evidence would probably
produce a different result if a new trial were granted. Id. at 809-10; Dankowski v. Dankowski, 922
S.W.2d 298, 305 (Tex. App.--Fort Worth 1996, writ denied).

 Here, the evidence showing that Leak was in possession of the truck would have been
cumulative of facts already presented at trial. The jury heard several times that Leak repeatedly tried to
return the truck to the dealership but the dealership did not want to deal with him. We conclude that the
dealership has not met the test set out in Jackson v. Van Winkle because the evidence would have been
cumulative. Moreover, the dealership has not shown that the evidence would probably produce a different
result if a new trial were granted. We overrule point of error five.


Sanctions


 By point of error eight, the dealership contends the trial court abused its discretion by
assessing sanctions of $2500 against the dealership and its attorney.

 Within seven days of trial, the dealership moved to join two parties to the suit without
obtaining leave of court. See Tex. R. Civ. P. 38. Leak sought sanctions. On appeal, the dealership
contends that, although it failed to raise an objection at trial, the trial court erred by failing to state the
particulars of the sanctions ordered as required by Texas Rule of Civil Procedure 13. At oral argument, the
dealership conceded this point of error because of our disposition in Land v. AT&S Transportation, Inc.,
947 S.W.2d 665 (Tex. App.--Austin 1997, no writ). In Land, this Court held that the failure to object at
trial to a lack of particularity of an order resulted in a failure to preserve for review any such complaint for
appellate review. Id. at 666-67; see also Campos v. Ysleta Gen. Hosp., Inc., 879 S.W.2d 67, 70 (Tex.
App.--El Paso 1994, writ denied); McCain v. NME Hosps., Inc., 856 S.W.2d 751, 756 (Tex.
App.--Dallas 1993, no writ); Bloom v. Graham, 825 S.W.2d 244, 247 (Tex. App.--Fort Worth 1992,
writ denied). We overrule point of error eight. (3)


Conclusion


 We sustain points of error two, three, and four. We reverse the portion of the judgment
awarding additional damages and mental anguish damages and render judgment that Leak take nothing by
those claims. We affirm the remainder of the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Reversed and Rendered in Part; Affirmed in Part

Filed: April 9, 1998

Publish

1.   The date of the deceptive act or practice determines which version of the DTPA applies. La Sara
Grain Co. v. First Nat'l Bank, 673 S.W.2d 558, 565 (Tex. 1984). Because the relevant acts in the
present case occurred in December 1994 and suit was filed before September 1, 1996, the 1995
amendments to the DTPA do not apply. See Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20, 1995
Tex. Gen. Laws 2988, 3004.
2.   Under the former appellate rules, a judgment could not be reversed on appeal on the ground that the
trial court made an error of law unless the appellate court determined that the error complained of was
reasonably calculated to cause and probably did cause the rendition of an improper judgment. Island
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986); see former
Tex. R. App. P. 81(b).
3.   We also overrule point of error one, which is a general complaint that the trial court "abused its
discretion in overruling Connell Chevrolet's motion for new trial."


tion for new trial will be granted or denied is within the trial court's discretion. 
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). A party moving for a new trial based upon
the existence of newly discovered evidence has the burden of showing: (1) admissible, competent evidence
showing the existence of the newly discovered evidence; (2) the evidence has come to the party's attention
since trial and the party had no notice of its existence before trial; (3) the party used due diligence to
procure the evidence before trial; (4) the evidence is not merely cumulative of that already presented and
does not tend only to impeach the testimony of the adversary; and (5) the evidence would probably
produce a different result if a new trial were granted. Id. at 809-10; Dankowski v. Dankowski, 922
S.W.2d 298, 305 (Tex. App.--Fort Worth 1996, writ denied).

 Here, the evidence showing that Leak was in possession of the truck would have been
cumulative of facts already presented at trial. The jury heard several times that Leak repeatedly tried to
return the truck to the dealership but the dealership did not want to deal with him. We conclude that the
dealership has not met the test set out in Jackson v. Van Winkle because the evidence would have been
cumulative. Moreover, the dealership has not shown that the evidence would probably produce a different
result if a new trial were granted. We overrule point of error five.


Sanctions


 By point of error eight, the dealersh