STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,
Appellant,

v.

Sandra Sue VANDIVER, Appellee.

No. 10–96–092–CV.

Court of Appeals of Texas,
Waco.

June 3, 1998.

732

Anne Gardner, Lori R. Thomas, J. Wade Birdwell, Shannon, Gracey, Ratliff & Miller, L.L.P., Fort Worth, for appellant.

Ronald D. Wren, Bedford, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Appellee Sandra Sue Vandiver brought suit against Appellant State Farm Fire & Casualty Insurance Company ("State Farm") seeking recovery for damages which resulted from the destruction of her home by a fire for which State Farm denied coverage. Vandiver alleged breach of contract, breach of the duty of good faith and fair dealing, unfair claims settlement practices, DTPA violations, and violations of orders of the State Board of Insurance. A jury found in Vandiver's favor, and the court entered judgment in accordance with the verdict.

## I. APPELLATE POINTS

State Farm presents twenty-six points of error. In seventeen of these points, State Farm claims that the trial court erred by:

- directing a verdict against State Farm on its arson defense and on Vandiver's breach of contract cause of action;

- overruling State Farm's motion for new trial because an arson finding would preclude Vandiver's recovery on any theories alleged as a matter of law;

- submitting a defective question on the issue of whether State Farm breached its duty of good faith and fair dealing because the question did not require the jury to also find that State Farm knew or should have known that it had no reasonable basis to deny the claim;

- submitting questions (and refusing to disregard the jury's findings) on alleged unlisted unfair claims settlement practices because no such causes of action exist under the Tex-

as Insurance Code, Texas insurance regulations, or the Deceptive Trade Practices Act (two points);

- refusing to disregard the jury's finding of damages for mental anguish because it is immaterial and because no questions were submitted on proximate cause;
- awarding prejudgment interest for mental anguish damages and trebling such damages because such damages are not supported by the evidence;
- overruling State Farm's objection to the definition of the term "knowingly" submitted to the jury in the court's charge;
- trebling Vandiver's damages because the jury failed to find that State Farm acted knowingly, with malice, or with gross negligence (two points);
- trebling damages in violation of State Farm's procedural and substantive due process rights and the excessive fines prohibitions of the federal and state constitutions;
- awarding attorney's fees to Vandiver because such fees are based on jury findings which must be set aside;
- impermissibly commenting on the weight of the evidence;
- trebling Vandiver's contract damages;
- trebling prejudgment interest awarded to Vandiver;
- calculating the prejudgment interest on incorrect interest rates and accrual dates; and
- taxing a co-defendant's costs against State Farm.

State Farm alleges in eight points that the evidence is legally and/or factually insufficient to support the jury's verdict. In one other point, State Farm argues that we must reverse and remand this cause for a new trial because the court reporter cannot provide the parties "a complete and accurate statement of facts."

## II. FACTUAL BACKGROUND

Vandiver owned a home in Ellis County on six acres of land. State Farm insured the property under a standard farm and ranch owner's policy. A fire consumed Vandiver's home on April 23, 1988. State Farm's investigation revealed that the fire had an incendiary origin. Its investigation led it to conclude that Vandiver had either set the house on fire or directed someone to set it on fire. For this reason, State Farm denied Vandiver's claim. Vandiver filed suit after State Farm denied her claim.

## III. THE "LOST" RECORD

State Farm's first point avers that State Farm is entitled to a new trial because the court reporter failed to record a portion of the trial proceedings. State Farm has presented this same contention previously in a motion requesting reversal and remand due to the allegedly "lost" record. We denied the motion in a published interlocutory order. *See State Farm Fire & Cas. Ins. Co. v. Vandiver*, 941 S.W.2d 343 (Tex.App—Waco 1997, order). State Farm cites no additional authorities in its brief to support its contention that it is entitled to a new trial. Accordingly, we overrule the first point.

## IV. THE DIRECTED VERDICT

State Farm argues in its second point that the court erred in directing a verdict against State Farm on its arson defense and on Vandiver's breach of contract claim. State Farm's sixth point contends that the court erred in overruling its motion for new trial premised on the court's directed verdict. We will consider the two parts of the directed verdict separately.

When considering the propriety of a directed verdict, we examine the record for any probative evidence which raises a fact issue on the question presented. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). We view the evidence in the light most favorable to the party against whom the court directed the verdict, disregarding any contrary evidence and inferences. *Id.; White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); If the record contains any conflicting probative evi-

dence on the issue, the issue should be submitted to the jury. *Id.*

## A. THE ARSON DEFENSE

To establish the affirmative defense of arson, an insurer bears the burden of proving by a preponderance of the evidence that the insured set the fire or caused it to be set. *State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279, 282 (Tex.App.—San Antonio 1992, writ denied); *accord Chubb Lloyds Ins. Co. v. Kizer,* 943 S.W.2d 946, 949 (Tex.App.—Fort Worth 1997, writ denied). Generally, the insurer must rely on circumstantial evidence to prove the defense. *See Polasek,* 847 S.W.2d at 282; *Garrett v. Standard Fire Ins. Co.,* 541 S.W.2d 635, 638 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.).

The crime of arson, being in defiance of law, is ordinarily conceived in secrecy and executed in such a manner as to avoid detection and exposure; and proof of such an unlawful enterprise must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the incident is legitimate and proper.

*Id.*

In order to establish the affirmative defense, the insurer must offer evidence:

(1) the fire had an incendiary origin;

(2) the insured had a motive to set the fire or cause it to be set; and

(3) the insured had an opportunity to set the fire or other circumstances linking the insured to the fire.

*See Polasek,* 847 S.W.2d at 282; *Johnson v. Garza,* 884 S.W.2d 831, 834–35 (Tex.App.—Austin 1994, writ denied).

When we review the record for probative circumstantial evidence of these elements, we examine the totality of the circumstances rather than viewing each piece of evidence in isolation. *Felker v. Petrolon, Inc.,* 929 S.W.2d 460, 464 (Tex.App.—Houston [1st Dist.] 1996, writ denied). We consider the totality of the circumstances to determine whether they "point to the ultimate fact sought to be established with such a degree of certainty as to make the conclusion reasonably probable." *Bufkin v. Texas Farm*

*Bureau Mut. Ins. Co.,* 658 S.W.2d 317, 320 (Tex.App.—Tyler 1983, no writ) (citing *Benoit v. Wilson,* 150 Tex. 273, 282, 239 S.W.2d 792, 797 (1951)); *accord Felker,* 929 S.W.2d at 463–64. So long as the inferences arising from the circumstantial evidence are not equally consistent with the nonexistence of the ultimate fact, some probative evidence exists in the record to support the ultimate fact. *Felker,* 929 S.W.2d at 463–64; *see also Tubelite v. Risica & Sons, Inc.,* 819 S.W.2d 801, 805 (Tex.1991).

Any evidence has probative value if it contributes to the proof of an issue. A single factor standing alone may be insufficient, but when joined by other factors constituting a significant whole, the combination can justify a conclusion. To sustain a finding of fact based upon circumstantial evidence, it is not necessary to exclude beyond suspicion every other possible inference that could be drawn from the facts shown. It is necessary to show only that one conclusion or inference is more probable than any other.

*Felker,* 929 S.W.2d at 464 (citing *Brinegar v. Porterfield,* 705 S.W.2d 236, 238–39 (Tex. App.—Texarkana), *aff'd,* 719 S.W.2d 558 (Tex.1986)) (other citations omitted).

The parties do not dispute that the fire which consumed Vandiver's home had an incendiary origin. Thus, we limit our inquiry to the latter two elements of the affirmative defense.

### 1. Motive

We first examine the record for any probative evidence tending to show that Vandiver had some motive to set her house on fire. The record reveals significant evidence that Vandiver was experiencing financial stress at the time of the fire. She had a horse-raising business which was not making a profit. Vandiver had used this business to write off expenses from her federal income taxes for a number of years. The year of the fire was the last year she would be able to deduct her expenses due to business losses. *See* 26 U.S.C.A. § 183(d) (West Supp.1998).

The record contains some probative evidence that Vandiver's monthly expenses at

the time of the fire exceeded her income. State Farm's analysis of her bank records revealed that she had a negative cash flow of almost $3,000 in the eight months prior to the fire with additional bank charges assessed for checks which were returned because of insufficient funds. Vandiver had less than $500 in her accounts the month before the fire.

Vandiver lived with a man who did not have steady employment. She assisted him in his child support obligations, for which he was more than $27,000 in arrears. She provided him a vehicle for which she made the monthly payments. She also provided him a credit card for gas. Although Vandiver claimed to be disinterested in his financial concerns, she had gone to his ex-wife's attorney two weeks before the fire in an attempt to resolve the dispute over his arrearages and avoid his having to be confined for contempt. She had also berated the attorney as being unreasonable for attempting to have him jailed for contempt at a hearing shortly before the fire.

The evidence also reflects that Vandiver's sister had accrued almost $5,000 in unauthorized charges on another of Vandiver's credit cards. The totality of the reasonable inferences arising from these circumstances constitutes some probative evidence that Vandiver had a motive to set her house on fire or cause it to be set on fire. *See Kizer,* 943 S.W.2d at 950–51; *Blankenship v. St. Paul Guardian Ins. Co.,* 911 S.W.2d 95, 98–99 (Tex.App.—Tyler 1995, no writ); *Polasek,* 847 S.W.2d at 283; *Lundy v. Allstate Ins. Co.,* 774 S.W.2d 352, 353–54, 358 (Tex.App.—Beaumont 1989, no writ); *Garrett,* 541 S.W.2d at 636–38.

### 2. Opportunity or Other Connecting Circumstances

One of Vandiver's neighbors reported the fire around 10:00 p.m. Vandiver testified that she was at her sister's condominium about forty-five minutes away until 10:30 or 11:00 that night. Her sister testified that Vandiver left around 10:00 that night. Vandiver testified that her sister and she were at the house about three and one-half hours before the fire. Her sister recalled that they arrived at her condominium that evening about an hour later than Vandiver testified they did. Vandiver's sister was the only person other than Vandiver herself who could testify to Vandiver's whereabouts at the time of the fire.

Other circumstances shown by the evidence also tend to support a theory of arson. Vandiver, her sister, and her roommate had the only keys to the house. Vandiver's roommate was in Abilene the day of the fire and returned the next morning. Vandiver believed that she had locked her house before leaving that evening. Vandiver had seven dogs on her property. Two neighbors testified that the dogs typically barked at strangers who came around. Neither of them heard Vandiver's dogs barking the night of the fire, although both were outside that evening. One of the neighbors found the house to be secured when he came over to investigate the fire.

State Farm had previously paid a claim of loss for a barn on Vandiver's property which had been consumed by a fire, the cause of which remains undetermined. Vandiver also had a pending claim for a theft loss of $1,500 for fishing lures.

The neighbors and fire officials testified that there had been no other incidences of vandalism, burglary or arson in the area at the time of the fire. When the adjuster met with Vandiver two days after the fire to record her statement, she also recorded the interview for the stated reason that she wanted to be able to fully relate to her roommate all matters addressed in the interview.

Vandiver admitted that she was on the premises a few hours before the fire. The house was locked at the time of the fire, and Vandiver and her sister were the only persons in the area with keys to the house. The failure of the dogs to bark creates a reasonable inference that no one else came on Vandiver's property that evening. The other circumstances recited all combine with these factors to justify a conclusion that Vandiver was the person who set the house on fire. Texas courts have found similar evidence of opportunity and other circumstances suffi-

cient to create a fact issue on the arson defense in numerous cases. *See Kizer,* 943 S.W.2d at 950–51; *Blankenship,* 911 S.W.2d at 97–99; *Polasek,* 847 S.W.2d at 282; *St. Paul Guardian Ins. Co. v. Luker,* 801 S.W.2d 614, 622–23 (Tex.App.—Texarkana 1990, no writ); *Lundy,* 774 S.W.2d at 354–55, 358; *Bufkin,* 658 S.W.2d at 319–21; *Garrett,* 541 S.W.2d at 636–38.

### 3. Summary

■ Because the record contains some probative evidence of incendiary origin, motive, opportunity, and other circumstances tending to link Vandiver to the fire, the evidence raises a fact issue on the affirmative defense of arson. Thus, the trial court erred in directing a verdict against State Farm on this issue.

### B. Breach of Contract

■ Arson is an affirmative defense to a claim that an insurer failed to pay for a fire loss under the terms of an insurance contract. *See Jones v. Fidelity & Guar. Ins. Corp.,* 250 S.W.2d 281, 282–83 (Tex.Civ. App.—Waco 1952, writ ref'd); *accord Kulubis v. Texas Farm Bureau Underwriters Ins. Co.,* 706 S.W.2d 953, 955 (Tex.1986); *Aetna Cas. & Sur. Co. v. Clark,* 427 S.W.2d 649, 653 (Tex.Civ.App.—Dallas 1968, no writ). We have already determined that the evidence raised a fact issue on the arson defense. Thus, the trial court erred in directing a verdict against State Farm on Vandiver's breach of contract claim.

For these reasons, we sustain State Farm's second point.

### C. The Motion for New Trial

Because the trial court erred in directing a verdict against State Farm on the affirmative defense of arson, the trial court also erred in overruling State Farm's motion for new trial, which called this error to the court's attention. Thus, we sustain State Farm's sixth point.

### V. RETRIAL

Having found error requiring reversal, we will remand this cause to the trial court for further proceedings. However, we must address additional points asserted by State Farm which raise issues likely to arise upon a retrial of this cause. *Cornell & Co. v. Pace,* 703 S.W.2d 398, 404 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *accord Indemnity Ins. Co. v. Williams,* 129 Tex. 51, 53, 99 S.W.2d 905, 906 (1937); *Byrd v. Trevino-Bermea,* 366 S.W.2d 632, 635 (Tex.Civ.App.—Austin 1963, no writ).

### A. The Jury Charge

State Farm presents five points of error concerning the court's charge to the jury. State Farm's eighth point alleges that the court submitted a defective question to the jury on the issue of whether State Farm breached its common law duty of good faith and fair dealing. Its eleventh point claims that the court should have disregarded the jury's answer to the bad faith question because it is immaterial. It contends in its ninth and tenth points that the court submitted questions on certain unfair claim settlement practices for which no causes of action exist. Its sixteenth point avers that the court submitted an erroneous definition of the term "knowingly" in the charge.

### 1. Good Faith and Fair Dealing

The court charged the jury on the issue of good faith and fair dealing in a manner consistent with the decision of the Supreme Court in *Aranda v. Insurance Co. of N. Am.* 748 S.W.2d 210, 213 (Tex.1988); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER & EMPLOYMENT PJC 103.2 (1997). In *Aranda,* the Court articulated a standard for this cause of action which required an insured to show the insurer: (1) either denied or delayed payment of her claim without a reasonable basis; and (2) knew or should have known that it had no reasonable basis upon which to deny or delay payment. *Aranda,* 748 S.W.2d at 213 (Tex. 1988).

■ The Supreme Court recently clarified the standard for proving this tort. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 54–56 (Tex.1997). Under *Giles,* the insured must prove the insurer: (1) either

denied or delayed payment of the claim; and (2) "knew or should have known that it was reasonably clear that the claim was covered." *Id.* In *Giles* the Court only clarified an existing cause of action. *Id.* at 54–56. Thus, the standard set forth therein applies retroactively. *Id.* at 56–57; *accord Carrollton–Farmers Branch Indep. School Dist. v. Edgewood Indep. School Dist.,* 826 S.W.2d 489, 515 (Tex.1992) (Supreme Court decisions generally apply retroactively).

Because *Giles* clarified the standard for bad faith claims, we need not address the propriety of the court's charge on good faith and fair dealing which it submitted under the *Aranda* standard. Accordingly, we overrule State Farm's eighth point.

### 2. Unfair Claims Settlement Practices

State Farm claims in its ninth and tenth points that the court submitted questions on certain unfair claims settlement practices for which no causes of action exist. In the charge, the first question asked the jury whether State Farm had engaged in "any unfair or deceptive act or practice" including among others:

d. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear; and

e. Denial of a claim when it had no reasonable basis for denial.

### (A) Failing to Effectuate Prompt Settlement

State Farm's ninth point challenges the submission of sub-part d. State Farm acknowledges that the Supreme Court recognized the theory set forth in sub-part d as a viable cause of action in *Vail v. Texas Farm*

*Bureau Mut. Ins. Co.* 754 S.W.2d 129, 132–36 (Tex.1988). However, State Farm suggests that the Court implicitly overruled this aspect of *Vail* in its subsequent decision in *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex.1994) (on rehearing).

In *Vail*, the Court addressed a suit brought by the insureds against their insurance company. *See id.* at 149. *Watson*, on the other hand, involved a suit against the insurance company by a third party claimant. *Id.* at 146. In *Watson*, the Court declined to extend the cause of action recognized in *Vail* to third party claimants because such claimants have "no legal relationship to the insurer or special relationship of trust with the insurer" upon which they can base such a cause of action. *Id.* at 149. The Court specifically held that *"Vail* remains the law as to claims for alleged unfair claim settlement practices brought by insureds against their insurers." *Id.*

State Farm suggests that this statement is mere dicta and that the legislature's refusal to create a private cause of action for unfair claims settlement practices under article 21.21—2 of the Insurance Code means that there is no "inherent justification for not applying the *Watson* court's rationale to this case and holding that Vandiver had no cause of action for alleged violations of article 21.21—2." We disagree.

In *Vail*, the Court recognized the theory set forth in sub-part d as a viable cause of action under any of three legal bases:

(1) by incorporating article 21.21, section 16 of the Insurance Code, section 4(a) of State Board of Insurance Order 18663[1], and the definition of an unfair claims settlement practice in article

---

1. The version of section 4 of State Board of Insurance Order 18663 in effect at the time Vandiver's claim accrued read in pertinent part as follows:

(a) Misrepresentation of insurance policies, unfair competition, and unfair practices by insurers, agents, and other connected persons are prohibited by article 21.20 and article 21.21 or by other provisions of the Insurance Code and by these sections of the State Board of Insurance. No person shall engage in this state in any trade practice that is a misrepresentation of an insurance policy, that is an unfair method of competi-

tion, or that is an unfair or deceptive act or practice as defined by the provisions of the Insurance Code or as defined by these sections and other rules and regulations of the State Board of Insurance authorized by the Code.

(b) Irrespective of the fact that the improper trade practice is not defined in any other section of these rules and regulations, no person shall engage in this state in any trade practice which is determined pursuant by law to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

28 Tex. Admin. Code § 21.3 (West 1997).

21.21—2, section 2(d) of the Insurance Code;

(2) by incorporating article 21.21, section 16 of the Insurance Code, section 4(b) of Board Order 18663, and the determinations made by the Court in *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987), and *Aranda,* 748 S.W.2d at 212–13; or

(3) by incorporating article 21.21, section 16 of the Insurance Code and section 17.46 of the Deceptive Trade Practices Act (TEX. BUS. & COM.CODE ANN. § 17.46 (Vernon 1987 & Supp.1998)).

*Vail,* 754 S.W.2d at 136.

### (1) Board Order 18663, § 4(a).

Regarding the first basis for recovery, the Court observed in *Watson* that "article 21.21—2 does not create a private cause of action for violations of that statute." *Watson,* 876 S.W.2d at 148; *accord Vail,* 754 S.W.2d at 134. The Court recounted how the legislature had rejected a proposal which would have created a private cause of action under section 16 of article 21.21 for unfair claim settlement practices defined by article 21.21—2. *Watson,* 876 S.W.2d at 149. The Court also noted that the legislature has refused to create a private cause of action for such practices for third party claimants. *Id.* The Court concluded:

We will not construe art. 21.21, section 16 to permit, indirectly, a third party claimant to sue an insurer for unfair claim settlement practices through Board Order 18663 where she may not do so directly and where the legislature has specifically refused to create such a cause of action for unfair claim settlement practices under art. 21.21, section 16 and art. 21.21—2.

*Id.*

We believe that the reasoning of *Watson* on this issue does not apply to first party claims such as Vandiver's for two reasons.

First, the legislature has now given insureds a private cause of action for unfair claim settlement practices by amending section 4 of article 21.21.[2] *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 55 (Tex.1997). Section 4 now defines the following, among others, as an "unfair and deceptive act or practice" which constitutes an "unfair settlement practice":

failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.

TEX. INS.CODE ANN. art. 21.21, § 4(10)(a)(ii) (Vernon Supp.1998). The legislature enacted this provision (and it took effect) in 1995, after *Watson. See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, §§ 11, 20, 1995 Tex. Gen. Laws 2988, 2999, 3004.[3] Notably, the statute expressly prohibits a third party claimant from asserting an unfair settlement practices claim. *See* TEX. INS.CODE ANN. art. 21.21, § 4(10)(b).

The *Watson* rationale on this issue also does not apply to first party claimants because the Court limited its holding to third party claimants in the concluding statement quoted above. *See Watson,* 876 S.W.2d at 149 ("We will not construe art. 21.21, section 16 to permit, indirectly, *a third party claimant* to sue an insurer for unfair claim settlement practices").

State Farm also suggests that the frequency requirement of article 21.21—2 serves as a bar to Vandiver's claim because Vandiver offered no evidence that State Farm failed to promptly and equitably settle claims in good faith "with such frequency as determined by the State Board of Insurance." Act of May 25, 1973, 63d Leg., R.S., ch. 319, § 1, 1973 Tex. Gen. Laws 735, 736 (amended 1991) (current version at TEX. INS.CODE ANN. art. 21.21—2, § 2 (Vernon Supp.1998)).

---

**2.** Section 16(a) of article 21.21 provides in pertinent part that the insured can maintain a cause of action against an insurance company for any "act or practice declared in Section 4 of this Article to be ... unfair or deceptive acts or practices." TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1998).

**3.** Section 4(10)(a)(ii) of article 21.21 applies to causes of action that accrue on or after September 1, 1995. Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex. Gen. Laws 2988, 3004. Thus, it does not apply to Vandiver's lawsuit.

State Farm acknowledges that the Court held in *Vail* that this frequency requirement only applies to the issuance of cease and desist orders under article 21.21—2 and not to lawsuits brought by insureds for unfair claim settlement practices identified in the statute. *Vail,* 754 S.W.2d at 134. However, State Farm suggests that the Court "seriously undermined" this aspect of *Vail* in *Watson.* We disagree.

■ The legislature deleted the frequency requirement of article 21.21—2, section 2 in 1991, prior to *Watson. See* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.12, 1991 Tex. Gen. Laws at 1060 (amended Aug. 25, 1991) (current version at Tex. Ins.Code Ann. art. 21.21—2, § 2). Thus, we conclude that *Vail* controls the applicability of the former frequency requirement of article 21.21—2 for causes of action which accrued during that period in which the statute contained a frequency requirement.

For each of these reasons, "*Vail* remains the law" as to this basis for liability. *Watson,* 876 S.W.2d at 149.

### (2) Board Order 18663, § 4(b)

Although the Court did not directly address this second theory of liability in *Watson,* the Court implicitly limited the availability of this avenue of recovery to first party claimants because of the "special relationship existing between an insured and the insurer." *See id.* Thus, "*Vail* remains the law" as to this basis for liability. *Id.*

### (3) Section 17.46 of the DTPA

■ State Farm contends that *Watson* has specifically modified *Vail* with respect to this third theory of liability. We agree. In *Vail,* the Court recognized unfair claim settlement practices as unlisted deceptive practices under section 17.46 of the DTPA. *Vail,* 754 S.W.2d at 135. However, the Court subsequently observed in *Watson* that article 21.21, section 16 "provides a private cause of action for any practice **defined by** section 17.46 of the DTPA as an unlawful deceptive

trade practice." *Watson,* 876 S.W.2d at 149; Tex. Ins.Code Ann. art. 21.21, § 16(a) (Vernon Supp.1998). Because unfair claim settlement practices are not listed in section 17.46 as deceptive practices, they are not actionable under article 21.21, section 16(a). *Watson,* 876 S.W.2d at 149. Thus, *Watson* does limit *Vail* in this one respect. *Accord Stewart Title Guar. Co. v. Becker,* 930 S.W.2d 748, 753 (Tex.App.—Corpus Christi 1996, writ denied); *Provident Am. Ins. Co. v. Castaneda,* 914 S.W.2d 273, 277 (Tex.App.—El Paso 1996, writ granted)[4]; *Tri–Legends Corp. v. Ticor Title Ins. Co.,* 889 S.W.2d 432, 441 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Hart v. Berko, Inc.,* 881 S.W.2d 502, 508–9 (Tex.App.—El Paso 1994, writ denied).

### (4) Summary

For these reasons, we conclude that the issue submitted in sub-part d continues to be a viable cause of action for first party claimants either by: (1) incorporating article 21.21, section 16 of the Insurance Code, section 4(a) of Board Order 18663, and the definition of unfair claim settlement practices of article 21.21—2, section 2(d); or (2) incorporating article 21.21, section 16 of the Insurance Code, section 4(b) of Board Order 18663, and the decisions in *Arnold* and *Aranda. See Vail,* 754 S.W.2d at 136. Accordingly, we conclude that trial court did not err in submitting sub-part d to the jury. *Accord State Farm Lloyds Ins. Co. v. Maldonado,* 935 S.W.2d 805, 819 (Tex.App.—San Antonio 1996) (on rehearing), *rev'd on other grounds,* 963 S.W.2d 38 (Tex.1998); *Rumley v. Allstate Indem. Co.,* 924 S.W.2d 448, 449–50 (Tex.App.—Beaumont 1996, no writ); *Castaneda,* 914 S.W.2d at 278–79; *Crum & Forster, Inc. v. Monsanto Co.,* 887 S.W.2d 103, 116–18 (Tex.App.—Texarkana 1994, vacated by agr.).

State Farm argues in a reply brief that even if this is a viable cause of action, Vandiver offered no evidence to support its submission to the jury. Because we are remanding this cause for retrial, we need not

---

4. On October 30, 1997, the Supreme Court granted Provident American's application for writ of error, agreeing to decide among other issues whether the cause of action alleged in

Vandiver's sub-part d is a "legally recognized" cause of action in light of *Watson. Provident Am. Ins. Co. v. Castaneda,* 41 Tex. Sup.Ct. J. 64, 72–73 (Oct. 30, 1997).

address the sufficiency of the evidence to support the submission of sub-part d to the jury. *See Gulf States Util. Co. v. Dillon,* 112 S.W.2d 752, 755–56 (Tex.Civ.App.—Waco 1937, no writ); TEX.R.APP. P. 47.1.

For these reasons, we overrule State Farm's ninth point.

**(B) Denial Without Reasonable Basis**

State Farm's tenth point challenges the submission of sub-part e. The Supreme Court articulated this cause of action in *Aranda. Aranda,* 748 S.W.2d at 213. There the Court held that an insurer breaches its duty of good faith and fair dealing when it denies or delays payment of a claim which it has no reasonable basis to deny or delay. *Id.* Although the Court did not discuss this theory of recovery in *Vail,* the rationale of *Vail* could support it as a viable cause of action by incorporating article 21.21, section 16, section 4(b) of Board Order 18663, and the decision in *Aranda. See Vail,* 754 S.W.2d at 136; *see also Castaneda,* 914 S.W.2d at 278.

 However, the Court significantly altered this theory of recovery in *Giles. See Giles,* 950 S.W.2d at 54–56. In *Giles,* the Court recast the "no reasonable basis" standard "in positive terms rather than the [former] negative formulation." *Id.* at 56. Under this standard, the insured must prove the insurer: (1) either denied or delayed payment of the claim; and (2) "knew or should have known that it was reasonably clear that the claim was covered." *Id.* Thus, the "no reasonable basis" test of *Aranda* is no longer the law and cannot serve as a basis for an unfair claim settlement practice cause of action under *Vail.*

Because sub-part e does not state a viable cause of action, the court erred in submitting it to the jury. Thus, we sustain State Farm's tenth point.

**3. "Knowing" Conduct**

State Farm contends in its sixteenth point that the court submitted an erroneous definition of the term "knowingly" in the charge.

State Farm relies on *Transportation Ins. Co. v. Moriel,* in which the Supreme Court held that before a jury can award common law punitive damages for an insurer's bad faith, the insured must prove that the insurance company's conduct was grossly negligent, intentional, fraudulent, or malicious. 879 S.W.2d 10, 23 & n. 16 (Tex.1994). State Farm suggests that this common law culpability requirement should be applied to the statutory scheme provided by article 21.21, section 16.

The jury must find that an insurance company knowingly engaged in the conduct alleged before an insured can recover statutory treble damages under the version of article 21.21, section 16 which applies to Vandiver's suit. *See* Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex. Gen. Laws 395, 395 (amended 1995) (current version at TEX. INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1998)). Article 21.21 defines "knowingly" as:

> actual awareness of the falsity, unfairness, or deception of the act or practice made the basis for a claim for damages under Section 16 of this Article. "Actual awareness" may be inferred where objective manifestations indicate that a person acted with actual awareness.

TEX. INS.CODE ANN. art. 21.21, § 2(c) (Vernon Supp.1998). The court submitted a question to the jury inquiring whether State Farm knowingly engaged in the conduct alleged. The court quoted the statutory definition of the term.

As we have already stated, the Court in *Moriel* required proof of culpability before an insured can recover common law punitive damages—not statutory treble damages. *Moriel,* 879 S.W.2d at 23 & n. 16. The Court also required that intermediate appellate courts detail and explain in light of the "*Kraus* [5] factors" why the evidence does or does not support such a punitive damages award. *Id.* at 31. The Court declined to require trial courts to conduct such an analysis. *Id.* at 33.

---

5. In *Alamo Nat'l Bank v. Kraus,* the Court articulated five factors to guide the intermediate appellate courts when deciding whether a punitive

damages award is excessive. 616 S.W.2d 908, 910 (Tex.1981); *see also Ellis County State Bank v. Keever,* 888 S.W.2d 790, 798 (Tex.1994).

The Court has extended the *Moriel* appellate standard of review for common law punitive damages to DTPA additional damages. *See Leonard & Harral Packing Co. v. Ward,* 937 S.W.2d 425, 425 (Tex.1996); *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 183 (Tex.1995). State Farm relies on these two decisions to suggest that an insured must establish a greater level of culpability than "knowing" conduct before he can recover statutory treble damages. We disagree.

■ In *Haynes & Boone* and *Leonard & Harral,* the Court merely adopted a new appellate standard of review. This appellate standard has no bearing on the level of culpability which an insured must prove in order to recover statutory treble damages. Rather, article 21.21, section 16 requires that the insured establish that the insurer acted knowingly. TEX. INS.CODE ANN. art. 21.21, § 16(b)(1).

The court correctly defined the term "knowingly" pursuant to the statute. *See St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.,* —— S.W.2d ——, —— –– ——, 41 Tex. Sup.Ct. J. 380, 381–82, 1998 WL 58969, at *3 (Feb. 13, 1998) (per curiam) (addressing identical statutory definition provided by DTPA[6]). Accordingly, we overrule State Farm's sixteenth point.

### 4. Mental Anguish Damages

In State Farm's eleventh point, it argues that the jury's affirmative answer to the bad faith question is immaterial because the question submitted for mental anguish damages is not referable to the bad faith finding and because the jury failed to find that State Farm acted with gross negligence when it violated its duty of good faith and fair dealing.

The court's charge submitted questions in the following order:

1. unfair claim settlement practices;
2. knowing conduct with reference to question 1;
3. mental anguish damages;
4. malice with reference to question 1;
5. attorney's fees;
6. bad faith; and
7. gross negligence with reference to question 6.

The question on mental anguish damages reads as follows:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate SANDRA SUE VANDIVER for her damages, if any that resulted from the conduct that you have found.

Do not add any amount for interest on past damages, if any.

Answer in dollars and cents, if any, for the following elements of damages:

a. Past mental anguish of SANDRA SUE VANDIVER, if any:

Answer: $100,000

b. Future mental anguish of SANDRA SUE VANDIVER, if any:

Answer: $ 0

State Farm contends that the jury must find gross negligence before mental anguish damages can be awarded for a common law bad faith claim. It cites *Moriel* in support of this proposition. We disagree. *Moriel,* as we read it, stands for the following propositions:

(1) an insured cannot recover mental anguish damages for a mere breach of the insurance contract;

(2) in order to recover mental anguish damages, the insured must establish an independent tort, such as bad faith; and

(3) in order to recover punitive damages for the bad faith tort, the insured must also establish that the insurer acted with gross negligence.

■ *Moriel,* 879 S.W.2d at 17–18; *accord Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 54 (Tex.1997). Thus, we conclude that mental anguish damages can be recovered on a finding of bad faith regardless of whether the insurer acted with gross negligence.

---

**6.** TEX. BUS. & COM.CODE ANN. § 17.45(9) (Vernon Supp.1998).

The jury found that State Farm acted knowingly when it engaged in certain unfair claim settlement practices alleged pursuant to article 21.21 of the Insurance Code. A plaintiff can recover mental anguish damages for unfair claim settlement practices under the Insurance Code if the jury finds that the insurer committed such practices "knowingly.". *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 436 (Tex.1995).

For these reasons, we conclude that Vandiver was entitled to a finding on mental anguish damages predicated on either the jury's finding of bad faith or the finding that State Farm had knowingly engaged in unfair claim settlement practices. However, we agree with State Farm's contention that the mental anguish question is somewhat ambiguous in that it does not refer to the bad faith question or the unfair claim settlement question. As a result, the jury may have been left to wonder which "conduct" on the part of State Farm served as the basis for the damages they awarded.[7]

Nevertheless, because the jury's mental anguish award is supported by either the finding of knowing unfair claim settlement practices or the common law bad faith finding, we overrule State Farm's eleventh point.

### B. TREBLING OF DAMAGES

State Farm raises four points in which it takes issue with the manner in which the court trebled the damages awarded to Vandiver. In its eighteenth, nineteenth, twentieth, and twenty-third points respectively, State Farm argues that the court erred in trebling damages:

- based on the unfair claim settlement findings because the jury failed to find that State Farm acted with malice;
- based on the bad faith claim because the jury failed to find gross negligence;
- because the treble damages award violates State Farm's procedural and substantive due process rights and

the excessive fines prohibition of the federal and state constitutions; and

- based on the breach of contract verdict.

### 1. Unfair Claim Settlement Practices

We have already discussed the fact that an insured can collect treble damages for unfair claim settlement practices under article 21.21, section 16 if the jury finds that the insurer knowingly engaged in the conduct alleged. The jury found knowing conduct in this case. Thus, we overrule State Farm's eighteenth point.

### 2. Bad Faith

State Farm is correct that an insured cannot recover punitive damages for bad faith conduct unless the jury finds that the insurer acted with gross negligence. *Id.* at 23 & n. 16. However, the court's award of treble damages finds support in the jury's finding that State Farm knowingly engaged in unfair claim settlement practices. *Cf. State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 48 (Tex.1998) (Court reversed bad faith punitive damages award due to insufficient evidence of gross negligence but rendered judgment for DTPA additional damages based on jury's finding of knowing violation of DTPA). Thus, we overrule State Farm's nineteenth point.

### 3. Breach of Contract

We also agree with State Farm that an insured cannot recover treble damages for a mere breach of contract. *See Moriel*, 879 S.W.2d at 26 n. 21; *Vail*, 754 S.W.2d at 136–37. However, the court's award of treble damages finds support in the jury's finding that State Farm knowingly engaged in unfair claim settlement practices. *Cf. Simmons*, 963 S.W.2d at 48. Thus, we overrule State Farm's twenty-third point.

### 4. Due Process

State Farm asserts that the trial court improperly trebled Vandiver's damages

7. The order of the questions and Vandiver's argument to the jury at the conclusion of trial suggested to the jurors that the mental anguish

damages question relates to the unfair claim settlement practices question.

"without applying substantive and procedural safeguards, including the right to judicial review for excessiveness, required by the due process and excessive fines clauses of the Texas and federal constitutions." State Farm specifically argues that: (1) the jury must find a level of culpability more egregious than knowing conduct before statutory treble damages can be awarded consistent with due process; and (2) because the trebling of damages is mandatory under the version of article 21.21, section 16 which applies to Vandiver's suit, State Farm is denied meaningful appellate review of the amount of the treble damages as required by due process and the excessive fines prohibitions.

■ We have already rejected the first argument when we overruled State Farm's sixteenth point. Thus, we must decide whether the mandatory treble damages provision of article 21.21, section 16 violates either the due process or excessive fines provisions of the federal and state constitutions.[8]

The Amarillo Court of Appeals has decided this issue adversely to State Farm. *See State Farm Fire & Cas. Co. v. Price,* 845 S.W.2d 427 (Tex.App.—Amarillo 1992, writ dism'd by agr.). The court observed:

> In providing for treble damages for knowing conduct, the Legislature obviously considered the offender's culpability as important, and proportioned damages in relation to the plaintiff's actual loss to deter the knowing commission of the prohibited acts or practices. The damage provision rationally relates to the interest of the state as stated in the purpose of the statute, and its enactment was within the discretion of the Legislature, since it did not violate the constitutional inhibition of being so severe and oppressive as to be wholly disproportioned to the prohibited acts or practices and unreasonable.

*Id.* at 440.

We find this reasoning persuasive and dispositive of State Farm's claim. Thus, we overrule State Farm's twentieth point.

## C. PREJUDGMENT INTEREST

State Farm claims in two points that the court incorrectly determined the prejudgment interest awarded to Vandiver. It suggests in its twentieth-fourth point that the court impermissibly trebled the prejudgment interest awarded. It contends in its twenty-fifth point that the court erroneously calculated the prejudgment interest using incorrect interest rates and accrual dates.

### 1. Trebling of Prejudgment Interest

■ The Supreme Court has recently held that prejudgment interest "should not be trebled." *St. Paul Surplus Lines Ins. Co.,* —— S.W.2d at ——, 41 Tex. Sup.Ct. J. at 382, 1998 WL 58969, at *4. The parties do not dispute that the trial court trebled the prejudgment interest in this case, which was error. Thus, we sustain State Farm's twenty-fourth point.

### 2. Prejudgment Interest Rate & Date of Accrual

The trial court granted Vandiver prejudgment interest on both her contract and mental anguish damages. The court calculated both at the rate of ten percent simple interest, apparently pursuant to the former article 5069—1.05, section 6(a) and (g) of the Revised Civil Statutes. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51–52 (repealed 1997) (current version at TEX. FIN.CODE ANN. §§ 304.102, 304.103, 304.104 (Vernon 1998)) ("TEX.REV.CIV. STAT. ANN. art. 5069—1.05, § 6(a), (g)"). The court also determined that interest began to accrue on both causes of action on the date State Farm denied Vandiver's claim, September 19, 1988.

### (A) Contract Damages

■ When a contract between the parties does not specify the rate of interest, the prevailing party is entitled to interest at the rate of six percent per annum if the contract

---

8. We express no opinion regarding whether due process requires application of the *Moriel* standard to additional damages awarded under the current version of article 21.21, section 16, which provides for *discretionary* additional damages. *See* TEX. INS.CODE ANN. art. 21.21, § 16(b)(1) (Vernon Supp.1998).

"ascertain[s] the sum payable." Act of May 24, 1979, 66th Leg., R.S., ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718 (repealed 1997) (current version at TEX. FIN.CODE ANN. § 302.002 (Vernon 1998))("TEX. REV. CIV. STAT. ANN. art. 5069—1.03"); *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 950 S.W.2d 371, 372 (Tex.1997). This statute applies to any contract which:

(1) provides the conditions upon which liability depends; and

(2) fixes a measure by which the sum payable can be ascertained with reasonable certainty, in the light of the attending circumstances.

*Id.* at 372–73 (quoting *Federal Life Ins. Co. v. Kriton*, 112 Tex. 532, 249 S.W. 193, 195 (1923)). The statute also provides that this interest begins to accrue "on the thirtieth (30th) day from and after the time when the sum is due and payable." TEX.REV.CIV. STAT. ANN. art. 5069—1.03.

 The policy in this case provides that Vandiver's claim for a total loss due to fire is a liquidated demand for the full amount of the policy. *See* TEX. INS.CODE ANN. art. 6.13 (Vernon 1981). Thus, it "constitutes a contract for an ascertainable sum payable within the meaning of article 5069—1.03." *St. Paul Ins. Co. v. Rakkar*, 838 S.W.2d 622, 631 (Tex.App.—Dallas 1992, writ denied). Accordingly, the former article 5069—1.03 governs the rate for any prejudgment interest attributable to Vandiver's contractual damages.

 Article 5069—1.03 also governs the date prejudgment interest would accrue on Vandiver's contract damages. *See Marineau v. General Am. Life Ins. Co.*, 898 S.W.2d 397, 405 (Tex.App.—Fort Worth 1995, writ denied); *Gorman v. Life Ins. Co. of N. Am.*, 859 S.W.2d 382, 390 n. 1 (Tex.App.—Houston [1st Dist.] 1993, no writ) (on rehearing). When an insurance company wrongfully denies payment of a claim, the sum becomes "due and payable" for purposes of article 5069—1.03 on the date the policy requires payment. *See Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121, 126 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). If the insured fails to prove the date she filed her proof of loss however, interest begins to accrue when liability is denied. *Id.*

In this case, Vandiver's policy provides that State Farm must pay her claim within sixty days after proof of loss. The record reflects that Vandiver filed her proof of loss with State Farm on June 30, 1988. Thus, State Farm's payment was "due and payable" on August 29, 1988. Pursuant to article 5069—1.03, prejudgment interest on Vandiver's contract damages began to accrue thirty days thereafter, September 28, 1988. *See Marineau*, 898 S.W.2d at 405 (interest began to accrue 30 days after insured's death where life insurance policy provided interest would begin to accrue on the date of death); *but cf. Gorman*, 859 S.W.2d at 390 (interest began to accrue 30 days after proof of loss filed).

**(B) Mental Anguish Damages**

Prejudgment interest accrues on Vandiver's mental anguish damages at the rate of ten percent per annum. *See Rakkar*, 838 S.W.2d at 632; TEX.REV.CIV. STAT. ANN. art. 5069—1.05, § 6(a), (g). Pursuant to the statute, interest on Vandiver's mental anguish damages would begin to accrue on the 180th day after the date State Farm received written notice of Vandiver's claim or on the day Vandiver filed suit, whichever occurred first. *Id.* art. 5069—1.05, § 6(a).

 A written notice of claim gives sufficient notice if it informs the insurer that the insured is "claiming compensation for [her loss] and afford[s] it the opportunity to settle the claim without incurring liability for prejudgment interest." *Robinson v. Brice*, 894 S.W.2d 525, 529 (Tex.App.—Austin 1995, writ denied). The insured need not "demand an exact amount or list every element of damage claimed." *Id.*

Vandiver testified that she filed her proof of loss with State Farm on June 30, 1988. In that proof of loss, Vandiver stated under oath that her home was damaged by fire and claimed payment of the policy limits ($216,740) for the loss. State Farm does not dispute that Vandiver filed the proof of loss on June 30. Rather, it claims that it did not receive "notice" for purposes of article

5069—1.05, § 6(a) until the date (February 16, 1990) Vandiver filed the notice required by the Insurance Code as a prerequisite to bringing suit under article 21.21, section 16. *See* Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex. Gen. Laws at 396 (amended 1995) (current version at TEX. INS. CODE ANN. art. 21.21, § 16(e) (Vernon Supp. 1998)). We disagree.

■ State Farm received sufficient notice of Vandiver's claim on June 30, 1988, when she filed her proof of loss. *See Robinson,* 894 S.W.2d at 529. Accordingly, prejudgment interest began to accrue on her mental anguish damages 180 days thereafter, December 27, 1988 (which is earlier than the date Vandiver filed suit, April 17, 1990). *See* TEX.REV.CIV. STAT. ANN. art. 5069—1.05, § 6(a).

### (C) Summary

The trial court incorrectly calculated the rate and accrual date for prejudgment interest on Vandiver's contractual damages. The court also incorrectly calculated the accrual date for prejudgment interest on her mental anguish damages. Thus, we sustain State Farm's twenty-fifth point.

### D. TAXING OF COSTS

State Farm argues in its twenty-sixth point that the trial court improperly taxed the court costs of its co-defendant, Vandiver's insurance agency, against State Farm. At the conclusion of Vandiver's case-in-chief, the trial court granted the insurance agency's motion for directed verdict on Vandiver's claims against the agency. In the judgment, the court awarded the agency its court costs and taxed "[a]ll costs expended or incurred in this cause ... against [State Farm]."

■ Rule 131 of the Rules of Civil Procedure provides that a "successful party" shall recover court costs from his opponent. TEX.R. CIV. P. 131. "A successful party is 'one who obtains a judgment of a competent court vindicating a claim of right, civil in nature.'" *Lovato v. Ranger Ins. Co.,* 597 S.W.2d 34, 37 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.) (quoting *Siepert v. Brewer,*

433 S.W.2d 773, 775 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.)).

■ In this case, the court's directed verdict vindicated the insurance agency from Vandiver's claims. *See Dear v. City of Irving,* 902 S.W.2d 731, 739 (Tex.App.—Austin 1995, writ denied). Thus, the court should have taxed the agency's costs against Vandiver, not State Farm. *See* TEX.R. CIV. P. 131. Accordingly, we sustain State Farm's twenty-sixth point.

### E. REMAINING POINTS

State Farm's remaining points address primarily the sufficiency of the evidence to support the verdict. Because we are reversing the judgment and remanding this cause for further proceedings, we need not address State Farm's remaining points. *See Dillon,* 112 S.W.2d at 755–56; TEX.R.APP. P. 47.1.

### VI. CONCLUSION

The trial court erred when it directed a verdict against State Farm on the affirmative defense of arson and Vandiver's breach of contract claim. Accordingly, we reverse the judgment and remand this cause for further proceedings consistent with this opinion.